GEORGE P. SOARES  (SBN: 213996)
gsoares@grsm.com
JENNIFER J KELLAR (SBN: 216573)
jkellar@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone:  (619) 230-7447
Facsimile:  (619) 696-7124

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN ADMIRALTY

| | |
|---|---|
| ACCELERANT SPECIALTY INSURANCE COMPANY, HADRON SPECIALITY INSURANCE COMPANY, SPINNAKER SPECIALTY INSURANCE COMPANY, TEXAS INSURANCE COMPANY, PALOMAR EXCESS AND SURPLUS LINES INSURANCE COMPANY, and LLOYD'S SYNDICATES PER UMR B0507GO2500002, <br><br> Plaintiffs, <br><br> vs. <br><br> RONIN SPORTFISHING, LLC, and KEVIN CHEESEMAN. <br><br> Defendants. | CASE NO.  '26CV0204 BAS VET <br><br> **COMPLAINT FOR:** <br><br> **1. DECLARATORY RELIEF; AND** <br> **2. BREACH OF CONTRACT** |

Plaintiffs, Accelerant Specialty Insurance Company, Hadron Specialty Insurance Company, Spinnaker Specialty Insurance Company, Texas Insurance Company, Palomar Excess and Surplus Insurance Company and Lloyd's Syndicates with UMR B0507GO2500002 (collectively "Underwriters" or "Plaintiffs"), by and through counsel, Gordon Rees Scully Mansukhani, LLP, submit the following Complaint.

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-1-

**INTRODUCTON**

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, et seq. in that a present controversy exists between the parties hereto in which Plaintiffs respectfully request this Court adjudicate and determine the rights of the parties to a contract of marine insurance that is in dispute.

**JURISDICTION AND VENUE**

2.      This is an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h) and 38(e). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

3.      Accelerant Specialty Insurance Company is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business located in the State of Georgia.

4.      Hadron Specialty Insurance Company is an Arkansas domiciled corporation, licensed and regulated by the Arkansas Insurance Department, with its principal place of business located in Alpharetta, Georgia.

5.      Spinnaker Specialty Insurance Company is an authorized/non-admitted insurer in Texas, with its administrative office located in the State of New Jersey.

6.      Texas Insurance Company is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Nebraska.

7.      Palomar Excess and Surplus Lines Insurance Company is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in California.

8.      Lloyd's Syndicates with UMR B0507GO250002 are Aegis Syndicate no. 1225 AES, Talbot Syndicate no. 1183 TAL and Liberty Mutual Insurance Europe SE (Institute of London Underwriters).

/ / /

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

9.    Upon information and belief, the defendant Ronin Sportfishing, LLC (the "Assured" or "Ronin") is a limited liability company whose members are citizens of the State of California.

10.    Upon information and belief, Kevin Cheeseman resides in San Diego, California and is a resident of the State of California.

11.    The Court has general jurisdiction over the parties pursuant to *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

12.    Venue is proper in the United States District Court for the Southern District of California as members of Ronin and Kevin Cheeseman reside in San Diego County, California. In addition, venue is proper in the United States District Court for the Southern District of California because in an admiralty case, venue is proper in any court with personal jurisdiction over the defendant. Finally, venue is proper in the United States District Court for the Southern District of California because Ronin agreed that it would be subject to jurisdiction in this Court.

## **GENERAL ALLEGATIONS**

### A.    **The Application**

13.    Underwriters issued Ronin policy no. CSYRP/2504470 (the "Policy") with a policy period of July 17, 2025 to July 17, 2026. A true and correct copy of the Policy is attached as Exhibit A. The terms, conditions, exclusions and warranties of the Policy are incorporated herein by reference.

14.    As part of applying for the Policy, the Assured presented and executed a renewal questionnaire on or about May 28, 2025 (the "Renewal Questionnaire"). A true and correct copy of the Renewal Questionnaire is attached as Exhibit B. Pertinently, the Renewal Questionnaire provided:

> **Operator 1:** Please ensure the details provided for **Kevin Cheeseman** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Kevin Cheeseman no longer operates the Scheduled Vessel, please cross out the table below.

COMPLAINT

| | |
|---|---|
| **Name** | Kevin Cheeseman |
| **Date of birth** | * * * |
| **State of residence** | TBD |
| **Years of boat ownership** | 0 |
| **Years of boating experience** | 9 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid license is held**<br>None | |
| **Details of previous vessels owned and/or operated**<br>24' Sea way<br>24' Freedom Boat Club<br>30' Ditmar | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

\* \* \*

**Please Read Before Signing:**

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.

2. Any misrepresentation in this renewal questionnaire may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to this questionnaire.

3. Fraud warning – please see the fraud warnings listed below and initial the paragraph relevant to you to indicated that you have read and understood this.

\* \* \*

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**Fraud Warning**

Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and may subject the person to criminal and civil penalties.

\* \* \*

**NOTICE TO CALIFORNIA APPLICANTS:**

For your protection, California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

(Emphasis in original.)

Kevin Cheeseman signed the Renewal Questionnaire as the Assured. A true and correct copy of the initial application form is attached as Exhibit C.

**B.    THE CLAIM**

15.    Plaintiffs are informed and believe that on or about November 2, 2025, the Vessel while out on a chartered fishing trip got caught in a current and ended up on the rocks while drifting in Zuniga Shoals, San Diego, CA (the "Accident").

16.    Prior to departing on the chartered fishing trip, the Assured had the passengers sign a release titled "H&M Landing, Acknowledgment of Risk and Release of Liability" (the "H&M Landing Release"). The H&M Landing Release only provided a release for H&M Landing. No release was provided for the Assured. The passengers did not sign the Concept Special Risks Limited (CSR/WAV/23-1) release of liability form (the "Concept Form"). A true and correct copy of the H&M Landing Release signed by the passengers is attached as Exhibit D.

COMPLAINT

17.    On November 3, 2025, the Assured tendered the claim to Underwriters. A true and correct copy of the Property Loss Notice is attached as Exhibit E. Underwriters understand that there was damage to the Vessel and, at least one of the passengers on the Vessel, has asserted a claim against the Assured. As used herein, the term "Claim" refers to any first-party claim and/or third-party claim arising from the Accident.

18.    Following tender of the Claim, Underwriters retained Sedgwick Claims Management Services, Inc. ("Sedgwick") to investigate the Claim. Sedgwick repeatedly communicated with the Assured regarding the condition of the Vessel and the circumstances surrounding the Accident.

19.    Underwriters conducted an investigation into the criminal background of Kevin Cheeseman ("Cheeseman") – the Vessel's operator at the time of the Accident. The investigation determined that Cheeseman had 3 prior convictions and/or pleas of no contest. These convictions and/or pleas of no contest include a conviction for nuisances, a conviction for possession of a controlled substance and a conviction for disorderly persons.

20.    On November 4, 2025, Sea Tow San Diego ("Sea Tow") contacted Underwriters regarding salvaging the Vessel (the "Salvage Claim"). Underwriters understood that although the Assured retained Sea Tow immediately following the Accident to salvage the Vessel, the Assured did not have the financial capability to cover the associated costs. Based on this fact and the threat of potential environmental pollution, Underwriters entered into a Non-Waiver Agreement with the Assured on or about November 6, 2025 to resolve Salvage Claim and Underwriters paid the deposit for the salvage. A true and correct copy of the non-waiver agreement is attached as Exhibit F. The terms and conditions of the Non-Waiver Agreement are incorporated herein by reference. Pursuant to the terms of the Non-Waiver Agreement, the Assured shall reimburse Underwriters for the amounts paid to settle the Salvage Claim upon written demand by Underwriters.

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

21.     In addition, pursuant to the terms of the Non-Waiver Agreement, Kevin Cheeseman guaranteed the performance of the Assured under the Non-Waiver Agreement.  If the Assured failed to make the required payment, Cheeseman was required to make the required payment.

22.     On November 24, 2025, Sedgwick issued a report ("Sedgwick Report") setting forth its findings and conclusions following its investigation. A true and correct copy of the Sedgwick Report is attached as Exhibit G. Sedgwick reported that as part of its investigation, it obtained statements from relevant witnesses.

23.     According to the Sedgwick Report, the captain (i.e. Cheeseman) advised Sedgwick that the Vessel was positioned to drift during a gear soaking period which was consistent with standard operating procedure. During the drift an unusually strong outflowing tide developed setting the Vessel towards the jetty. Cheeseman advised Sedgwick that he took immediate action to maneuver the Vessel, however, the propeller made contact with the bottom, resulting in a loss of propulsion. Without propulsion, the Vessel drifted into shallower water and grounded.

24.     The Sedgwick Report also stated a crew member advised he was watching the jetty as the Vessel was drifting and found that the drift was stable and safe. The crew member advised Sedgwick that he lost track of the jetty "between answering [passengers'] questions, the deck light's ambience, and darkness". By the time he was aware of the jetty's position, the propeller had hit a submerged rock and the single means of propulsion was out.

25.     Pursuant to the Sedgwick Report, a passenger advised that the captain was cooking and not manning the helm at the time of the Accident and the only call the crew member made prior to hitting the jetty was that the Vessel was a boat length away from another vessel. Additionally, the passenger stated that once the Vessel hit the jetty, the captain came out and yelled at the crew member for not

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-7-

keeping an eye out.

26.     Underwriters has or will pay Sea Tow the total agreed upon amount of $228,888.96 to resolve the Salvage Claim.

27.     On or about January 13, 2026, Underwriters denied coverage for the Claim. A true and correct copy of the correspondence sent to the Assured and Cheeseman is attached as Exhibit H. In addition, in the correspondence, Underwriters offered to return the Policy premium to the Assured and sought reimbursement of all monies Underwriters paid in connection with the Salvage Claim.

## C.     THE POLICY

28.     The Policy contains a choice-of-law provision which provides in part:

**11.  Service of Suit, Choice of Law and Forum**

**It is hereby agreed that any dispute arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, any dispute or claim arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York... .** (Emphasis in original.)

29.     In pertinent part, the insuring agreement for Coverage A provides:

If a sum insured is shown for Section A of the Insuring Agreement Declaration Page, We provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions.

***

The Deductible shown under Section A of this Insuring Agreement Declaration Page shall apply to each claim under the Insuring Agreement except for claims for actual and/or Constructive or Compromised Total Loss of the

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Scheduled Vessel, unless arising from a named or numbered Windstorm.

30. In pertinent part, the insuring agreement for Coverage B provides:

If a sum insured is shown under Section B of the Insuring Agreement Declaration Page, We provide coverage for any sum or sums which You or any other Covered Person become legally liable to pay and shall pay as a result of the ownership of Scheduled Vessel… . .

31. The Policy provides the following language regarding extensions under Coverage B of the Policy to include commercial passenger general liability coverage and pollution liability coverage:

**Coverage B, Extension to include Commercial Passenger Liability**

Subject to Our prior written agreement and Your payment of an additional premium.  We may at Your request extend this Insuring Agreement to cover all sums which You become legally liable to pay and shall pay to Fare Paying Passengers or passengers under Charter as a result of Your ownership or operation of the Scheduled Vessel.

\*\*\*

**Coverage B, Extension to include Limited Pollution Coverage**

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (vii) Coverage B, Third Party Liability, We agree to indemnify You for reasonable costs incurred by You preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the Scheduled Vessel, where coverage is afforded under this Insuring Agreement … .  (Emphasis in original).

32. The Policy's declaration page provides the following warranty regarding release waivers:

**Insuring Agreement Wording:**

Commercial Yacht Insuring Agreement (SYP/22/COM). Amended to include Captain Charter with liability to maximum eighteen passengers within Combined Single Limit. Including liability to three paid crew within Combined Single Limit.  It is warranted that all

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

participants will sign a Concept Special Risks Limited (CSR/WAV/23-1) release of liability, regardless of whether they are paying or complimentary, prior to the commencement of the charter activity, unless otherwise agreed by us, all releases of liability must be retained for seven years and provided to us on request. Additional Assured noted as per schedule below. (Emphasis in original) (the "Release Warranty")

33.   The Policy provides the following language regarding warranties in the Policy:

    **xix.**   Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.   (Emphasis in original) (the "Warranty Provision")

34.   The Policy provides the following provision regarding misrepresentations and non-disclosures by the Assured:

    **xii.**   This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstance material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision. (Emphasis in original) (the "Misrepresentation Provision".)

35.   The Policy provides the following warranty regarding the seaworthiness of the Vessel:

    **ii.**   It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception. (Emphasis in original) (the "Seaworthiness Warranty".)

36.   The Policy provides the following warranty regarding the named operator(s) of the Vessel:

    **xxiii.** It is warranted that the Scheduled Vessel will be operated only by Covered Persons. However, in the event of an incident occurring when the Scheduled

-10-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Vessel is being operated by any person other than a Covered Person, that may give rise to a claim under this Insuring Agreement, You have a period of seven days following such an incident to submit details of the operator for retroactive approval by us. (Emphasis in original) (the "Named Operator Warranty".)

37. The Policy provides the following warranty regarding compliance with all laws and regulations governing use and/or operation of the Vessel:

ix. It is warranted that Covered Persons must at all times comply with all laws and regulations, governing the use and or operations of the Scheduled Vessel. We shall not be deemed to provide cover or shall We be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America. (Emphasis in original) (the "Regulations Warranty")

38. The Policy provides the following definitions:

iii. 'Covered Person,' means You, and/or any person detailed on Your application form which has been submitted by You and approved by Us, provided that person has been declared to Us as an operator of the Scheduled Vessel.

* * *

xi. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use. (Emphasis in original)

## **FIRST CLAIM FOR RELIEF**

**(Declaratory Relief – The Misrepresentation Provision Against Ronin)**

39. Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

40.     The Misrepresentation Provision renders the Policy null and void in the event of a non-disclosure or misrepresentation of a fact or circumstance material to the Policy.

41.     Here, the Assured made representations and non-disclosures material to the acceptance of the Policy. These representations and non-disclosures include, but are not limited to, the representations and non-disclosures discussed in the subsequent paragraphs.

42.     The Assured represented in the Renewal Questionnaire that all questions were fully answered and all facts material to its insurance were disclosed. This representation was material to Underwriters' acceptance of the risk.

43.     In addition, in the Renewal Questionnaire, the Assured represented that Cheeseman had no convictions and pleas of no contest. This representation was material to Underwriters' acceptance of the risk.

44.     Cheeseman had prior convictions and/or pleas of no contest.

45.     As a result of the breach of the Misrepresentation Provision, the Policy is void from inception and Underwriters have no duty to defend or indemnify the Assured against the Claim. Moreover, there is no coverage available to the Assured under Coverage A and/or Coverage B of the Policy.

46.     Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Misrepresentation Provision does not preclude coverage for the Claim and that coverage is available to the Assured under Coverage A and/or Coverage B of the Policy.

47.     Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Misrepresentation Provision does not void the Policy from inception.

48.     A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

/ / /

COMPLAINT

49.     A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief –Uberrimae Fidei Against Ronin)

50.     Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

51.     The federal admiralty doctrine of *uberrimae fidei* precludes coverage if the assured makes misrepresentations and/or does not disclose facts that materially affect Underwriters' acceptance of the risk.  Breach of the doctrine of *uberrimae fidei* renders the Policy null and void.

52.     The Assured failed to disclose information and/or made misrepresentations during the application process, including but not limited to, that the fact that Cheeseman had convictions and/or pleas of no contest.

53.     These fact and circumstances were material to Underwriters' acceptance of the risk.

54.     As a result of the misrepresentations and/or omissions, the federal admiralty doctrine of *uberrimae fidei* voids the Policy from inception and Underwriters have no duty to defend or indemnify the Assured against the Claim. Moreover, there is no coverage available to the Assured under Coverage A and/or Coverage B of the Policy.

55.     Underwriters are informed and believe, and on that basis allege, that the Assured contends that the doctrine of *uberrimae fidei* does not preclude coverage for the Claim and that coverage is available to the Assured under Coverage A and/or Coverage B of the Policy.

56.     Underwriters are informed and believe, and on that basis allege, that the Assured contends that *uberrimae fidei* does not void the Policy from inception.
/ / /

-13-

57.    A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

58.    A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief –The Release Warranty Against Ronin)

59.    Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

60.    The Release Warranty requires the Assured to have all participants on any charter sign the Concept Form prior to the commencement of the charter.

61.    The release signed by the passengers on the Vessel at the time of Accident was not the Concept Form. Accordingly, the Release Warranty was breached.

62.    Any breach of a Policy warranty voids the Policy from inception pursuant to the Warranty Provision, Federal Admiralty law and/or New York law.

63.    As the Release Warranty was breached, Underwriters have no duty to defend or indemnify the Assured against the Claim. Moreover, there is no coverage available to the Assured under Coverage A and/or Coverage B of the Policy.  In addition, the Policy is void from inception.

64.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Release Warranty does not preclude coverage for the Claim and that coverage is available to the Assured under Coverage A and/or Coverage B of the Policy.

65.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Release Warranty does not void the Policy from inception.

/ / /

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

66.    A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

67.    A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – Seaworthiness Warranty Against Ronin)

68.    Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

69.    The Seaworthiness Warranty requires the Assured to ensure that the Vessel is "seaworthy" at all times during the duration of the Policy. Further, the Policy defines "seaworthy" to mean "fit for the Scheduled Vessel's intended purpose…and includes the responsibility of assigning an adequate crew.  For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use."

70.    The Vessel was not seaworthy during the duration of the Policy.

71.    To be seaworthy, the Vessel must be manned during the entire voyage. Underwriters are informed and believe that the captain did not man the Vessel during the entire charter. Thus, Vessel was not seaworthy at all times.

72.    As a result of the breach of the Seaworthiness Warranty, the Policy is void from inception and Underwriters do not have a duty to defend or indemnify the Assured against the Claim. Moreover, there is no coverage available to the Assured under Coverage A and/or Coverage B of the Policy.

73.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Seaworthiness Warranty does not void the Policy from inception.

74.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Seaworthiness Warranty does not preclude coverage

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

for the Claim and that coverage is available to the Assured under Coverage A and/or Coverage B of the Policy.

75.    A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

76.    A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief – Named Operator Warranty Against Ronin)

77.    Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

78.    Pursuant to the Named Operator Warranty the Assured warrants that the Vessel will only be operated by "Covered Persons".

79.    The Vessel was not operated by a "Covered Person" at all times.

80.    Underwriters are informed and believe that the captain, who was a "covered person", did not man the Vessel during the entire charter. Thus, the Assured did not ensure that the Vessel was operated only by a "Covered Person".

81.    As a result of the breach of the Named Operator Warranty, the Policy is void from inception and Underwriters do not have a duty to defend or indemnify the Assured against the Claim. Moreover, there is no coverage available to the Assured under Coverage A and/or Coverage B of the Policy.

82.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Named Operator Warranty does not void the Policy from inception.

83.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that the Named Operator Warranty does not preclude coverage for the Claim and that coverage is available to the Assured under Coverage A and/or Coverage B of the Policy.

COMPLAINT

84.     A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

85.     A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief – No Coverage for the Claim Against Ronin)

86.     Underwriters incorporate the allegations in all of the foregoing paragraphs as if set forth fully herein.

87.     There is no coverage under the Policy for the Claim.  Coverage for the Claim is barred by the terms, exclusions, warranties and conditions of the Policy, including but not limited to, the Misrepresentation Provision, the Release Warranty, the Seaworthiness Warranty, the Named Operator Warranty, the Regulations Warranty and the Warranty Provision.

88.     The Assured is not legally entitled to recover under the Policy for the Claim.

89.     Coverage under the Policy is precluded because the Assured breached the terms, conditions, warranties, and exclusions of the Policy and/or the Claim does not satisfy the terms and conditions of the Policy.

90.     Underwriters are informed and believe, and on that basis allege, that the Assured contends that the terms, conditions, warranties, and exclusions of the Policy were not breached and coverage is not precluded for the Claim.

91.     A justiciable controversy has arisen as a result of the Assured's Claim for benefits under the Policy.

92.     A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the applicability of coverage to the Assured's Claim.

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

COMPLAINT

93.    Underwriters seek a judicial declaration that there is no coverage for the Claim under the Policy.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Relief- Salvage Claim Against Ronin)

94.    Underwriters incorporate the allegations in all the foregoing paragraphs as if fully set forth herein.

95.    The Non-Waiver Agreement obligates the Assured to reimburse Underwriters for any amounts Underwriters paid to settle the Salvage Claim upon demand.

96.    Underwriters completed its coverage investigation and determined no coverage exists for the Salvage Claim.

97.    Underwriters have sought reimbursement of the monies it paid to Sea Tow to resolve the Salvage Claim.

98.    Underwriters are informed and believe, and on that basis allege, that the Assured contends that it is not responsible for the Salvage Claim and the Assured contends it is not required to reimburse Underwriters for all expenses and costs paid by Underwriters in connection with the Salvage Claim.

99.    A justiciable controversy has arisen as a result of the Salvage Claim.

100.    A judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the Salvage Claim.

101.    Underwriters seek a judicial declaration that the Assured is responsible for the Salvage Claim and that the Assured is required to reimburse Underwriters for any sums expended by Underwriters in connection with the Salvage Claim.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Contract Against Ronin)

102.    Underwriters incorporate the allegations in all the foregoing paragraphs as if fully set forth herein.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

COMPLAINT

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

103.    The Non-Waiver Agreement obligates the Assured to reimburse Underwriters for any amounts Underwriters paid to settle the Salvage Claim upon demand.

104.    Underwriters completed its coverage investigation and determined no coverage exists for the Salvage Claim.

105.    Underwriters have sought reimbursement of the monies it paid to Sea Tow to resolve the Salvage Claim.

106.    The Assured has not paid for the costs associated with salvaging the Vessel following the Accident and/or reimbursed Underwriters for monies it paid to Sea Tow to resolve the Salvage Claim breaching its contractual obligations to Underwriters.

107.    As a direct and proximate result of the breach by the Assured, Underwriters have suffered and continue to suffer damages in an amount subject to proof at trial.

108.    The Assured's failure to pay the costs associated with salvaging the Vessel constitutes a material breach of the Assured's contractual obligations under the Policy and/or non-waiver agreement and Underwriters are entitled to all direct, indirect, consequential, special and compensatory damages resulting from the Assured's breach.

WHEREFORE, Underwriters pray for judgment as set forth below.

## NINTH CLAIM FOR RELIEF

### (Declaratory Relief- Salvage Claim Against Cheeseman)

109.    Underwriters incorporate the allegations in all the foregoing paragraphs as if fully set forth herein.

110.    The Non-Waiver Agreement obligates the Assured to reimburse Underwriters for any amounts Underwriters paid to settle the Salvage Claim upon demand.  Moreover, in the Non-Waiver Agreement, Cheeseman guaranteed payment and agreed that if the Assured failed to make payment, he would make the

payments.

111.   Underwriters completed its coverage investigation and determined no coverage exists for the Salvage Claim.

112.   Underwriters have sought reimbursement from the Assured of the monies it paid to Sea Tow to resolve the Salvage Claim.

113.   Underwriters have not been reimbursed.

114.   Underwriters are informed and believe, and on that basis allege, that Cheeseman contends he is not required to reimburse Underwriters for all expenses and costs paid by Underwriters in connection with the Salvage Claim.

115.   A justiciable controversy has arisen as a result of the Claim for benefits under the Policy.

116.   Judicial determination of these issues will fully and finally resolve the uncertainty and controversy relating to the Salvage Claim.

117.   Underwriters seek a judicial declaration that the Cheeseman is required to reimburse Underwriters for any sums expended by Underwriters in connection with the Salvage Claim.

## TENTH CLAIM FOR RELIEF

### (Breach Of Contract Against Cheesman)

118.   Underwriters incorporate the allegations in all the foregoing paragraphs as if fully set forth herein.

119.   The Non-Waiver Agreement obligates the Assured to reimburse Underwriters for any amounts Underwriters paid to settle the Salvage Claim upon demand.  Moreover, in the Non-Waiver Agreement, Cheeseman guaranteed payment and agreed that if the Assured failed to make payment, he would make the payments.

120.   Underwriters completed its coverage investigation and determined no coverage exists for the Salvage Claim.

121.   Underwriters have sought reimbursement of the monies it paid to Sea

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Tow to resolve the Salvage Claim.

122.   The Assured has not paid for the costs associated with salvaging the Vessel following the Accident and/or reimbursed Underwriters for monies it paid to Sea Tow to resolve the Salvage Claim breaching its contractual obligations to Underwriters.

123.   Cheeseman has not reimbursed Underwriters.

124.   As a direct and proximate result of the breach by Cheeseman, Underwriters have suffered and continue to suffer damages in an amount subject to proof at trial.

125.   Cheeseman's failure to pay the costs associated with salvaging the Vessel constitutes a material breach of Cheesman's contractual obligations under the Non-Waiver Agreement and Underwriters are entitled to all direct, indirect, consequential, special and compensatory damages resulting from the Cheeseman's breach.

WHEREFORE, Underwriters pray for judgment as set forth below.

## **PRAYER**

WHEREFORE, Underwriters pray for judgment as follows:

A.   That this Court find and declare that the Assured is not entitled to benefits under the Policy.

B.   That this Court find and declare that Underwriters are not required to defend or indemnify the Assured against the Claim.

C.   That this Court find and declare that the Policy is void from inception.

D.   That this Court find and declare that the Misrepresentation Provision precludes coverage for the Claim and voids the Policy from inception.

E.   That this Court find and declare that the federal admiralty doctrine of *uberrimae fidei* precludes coverage for the Claim and voids the Policy from inception.

F.   That this Court find and declare that the Release Warranty precludes

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

coverage for the Claim and voids the Policy from inception.

G.     That this Court find and declare that the Seaworthiness Warranty precludes coverage for the Claim and voids the Policy from inception.

H.     That this Court find and declare that the Named Operator Warranty precludes coverage for the Claim and voids the Policy from inception.

I.     That this Court find and declare that there is no coverage for the Claim.

J.     That this Court find and declare that there is no coverage available under Coverage A for the Claim.

K.     That this Court find and declare that there is no coverage available under Coverage B for the Claim.

L.     That this Court find and declare that the Assured is responsible for the Salvage Claim and is required to reimburse Underwriters all sums Underwriters have paid in connection with the Salvage Claim.

M.     For all direct, indirect, consequential, special and compensatory damages resulting from the Assured's breach of the Non-Waiver Agreement.

N.     That this Court find and declare that Cheeseman is required to reimburse Underwriters all sums Underwriters have paid in connection with the Salvage Claim.

O.     For all direct, indirect, consequential, special and compensatory damages resulting from Cheeseman's breach of the Non-Waiver Agreement.

P.     For costs of suit.

Q.     For such other relief as the Court deems just and proper.

Dated: January 13, 2026         GORDON REES SCULLY MANSUKHANI, LLP

By:  */s/ Jennifer J. Kellar*
George P. Soares
Jennifer J. Kellar
Attorneys for Plaintiffs